### James E. Whitesides v. Springfield Colliery Company.

PEREMPTORY INSTRUCTION—*when properly given.* A peremptory instruction for the defendant is properly given where that aspect of the evidence most favorable to the plaintiff fails to disclose a right of recovery.

Action in case for personal injuries. Error to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1907. Affirmed. Opinion filed December 7, 1907.

S. H. CUMMINS, for plaintiff in error.

BROWN, WHEELER, BROWN & HAY, for defendant in error.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by James E. Whitesides against the Springfield Colliery Company to recover

damages for personal injuries received by the plaintiff through the alleged negligence of said company.

At the close of the plaintiff's evidence, the trial court directed a verdict for the defendant. Judgment was rendered upon the verdict so returned, to reverse which this writ is prosecuted by the plaintiff.

The declaration, in substance, avers that the defendant was possessed of a certain coal mine and had attached thereto a certain coal chute which was out of repair in that the frame work was loose and the timber therein old, rotten and insecure, so that the same was not reasonably safe for one to work therein, which condition the defendant well knew or by the exercise of due care could have known; that the plaintiff requested the defendant to erect a scaffold or furnish the necessary material with which to erect one for the purpose of tearing down the said chute, but that the defendant refused so to do, and ordered the plaintiff to get into the said chute and tear the same down; and that while he was working in said chute in obedience to said order of the defendant, and with all due care, the sheet iron lining suddenly gave way by reason of the rotten condition of the said chute and threw the plaintiff to the ground, injuring him, etc.

The evidence adduced by the plaintiff, together with all justifiable inferences to be drawn therefrom, discloses the following facts: The plaintiff, who was thirty-six years of age, had been following the trade of carpenter for about thirteen years prior to the time he was injured. For six months he had been employed by the defendant as a carpenter in and about its coal shafts. On the day before the accident the superintendent of the mine ordered him to take down and apart two coal chutes which stood upon uprights adjoining the coal shafts and were twenty feet in height from the ground, twelve feet long and about five feet wide. The sides above the floor being about three feet high. The floors of the chutes were lined with sheet iron which was spiked thereto. The chutes

Whitesides v. Springfield Colliery Co.

inclined from the shaft toward the ground at an angle of about thirty degrees, and were open at each end. At the lower end of each, which was about four feet from the ground, there were cross-caps bolted to the upright to prevent the sides from spreading. Before beginning work upon the chutes, the plaintiff told the superintendent that he did not like to take them down without first building scaffolds at the sides so that he and his assistants could work with safety, and requested that they be given lumber with which to build the same. The superintendent replied that there was no lumber at hand; that he thought they could safely go into the shaft and tear out the sheet iron lining of the floor if they were careful; he then directed plaintiff and those who were assisting him to first pry one-half of the sheet iron from the floor and then to use a block and tackle which was on hand, and see if they could not "yank" the rest of the iron off. Plaintiff and the other employes tore down one of the chutes, and on the following day started to remove the sheet iron lining from the floor of the other. As they loosened the iron they bent it away from them toward the lower end of the chute rolling it up so far as possible as they proceeded.

When they reached a point within about two feet of the lower end, they endeavored to use the block and tackle to "yank" off the rest of the lining. Being unable to do so because of the intervention of the cross-cap and the passage of cars they then tried to bend the loosened iron down so that it would go under the cross-cap. While they were so engaged the bottom of the chute by reason of the decayed condition of its timbers, gave way, throwing the plaintiff to the ground and injuring him. The evidence further shows that during the progress of the work the superintendent came to the chute on two occasions and told plaintiff to hurry up with the work, that he desired to use the lumber in the chute and was waiting for it.

We are of opinion that the court properly directed

a verdict for the defendant. Counsel for appellant concedes that if appellant had gone to work in the chute of his own volition and without order or direction from the superintendent, he would have thereby assumed the risk, but insists that inasmuch as the facts in evidence show that he was expressly directed by the superintendent to go into the chute and do the work he cannot be held to have assumed the risk. Such contention is unsound for the reason that it is obvious that the accident was not due to the mere fact that appellant went into the chute and undertook to tear it down. His injuries were the result of the method adopted by him in doing the work. Notwithstanding he was specifically directed to remove the lining at the lower end of the chute by the use of the blocks and tackle, he elected to ignore such express directions and voluntarily adopted a method manifestly more perilous. By so doing he assumed the risk of injury attendant thereupon. He was, as shown by his own testimony, of mature age, had had experience in wrecking chutes and fully understood the nature of the employment, which was obviously hazardous. The fact that he was prevented by the passage of cars and the intervention of the cross-caps from using the block and tackle did not excuse his disobedience of the specific directions of the superintendent. When he ascertained that the method directed was impracticable it was his duty to discontinue the work. The orders of the superintendent to "hurry up" which were given when the work was begun and again as they started to roll up the sheet iron at the top of the chute did not serve to change, modify or effect the former one as to the method to be followed.

The aspect of the evidence most favorable to appellant fails to disclose a right of recovery and the trial court properly directed a verdict for the defendant.

The judgment thereon will be affirmed.

*Affirmed.*